## DECEMBER TERM, 1843.

### WILLIAM ROBINSON *v.* THOMAS J. THOMPSON, *et al.*

R., holding a mortgage on T.'s property, agreed to receive some money and take the property back, in discharge of the mortgage; T. paid the money, but refused to deliver the property; *held*, that the mortgage was not discharged by the agreement.

R., being surety to A. R. for T., was indemnified by a mortgage on T.'s property; and filed · his bill to foreclose the mortgage, and be discharged from his suretyship; *held*, it was no answer to this bill, that T. had been garnisheed at law, as a debtor of A. R., and that the garnishment was still pending.

A mortgage being given to secure a debt to a partnership, upon the death of one of the firm, the surviving partner is the only necessary party, to represent the partnership interests.

THE bill in this case was filed by William Robinson, against Thomas J. Thompson, and Andrew J. Rembert, to foreclose a mortgage given by Thompson under these circumstances.

Andrew J. Rembert and George Rembert sold Thompson two negroes for twelve hundred dollars, and took his note, with the complainant and William M'Grew as sureties; to indemnify and save them harmless, Thompson executed a mortgage on these negroes, by which it was provided, that if Thompson should make default in the payment of the note, for twelve hundred dollars, the sureties, or either of them, might, at any time after the maturity of the note, take the negroes, sell them, and with the proceeds of the sale pay off the note; and Thompson covenanted in case of default, to deliver them the negroes. Thompson paid three hundred dollars on the note; and suit was instituted by Andrew J. Rembert (to whom the bill averred the note had been assigned), in the Circuit Court of Copiah county, against all the parties to the note for the balance; Thompson refused to deliver the negroes to the complainant, and M'Grew refused to unite with him in the bill; and accordingly, Robinson exhibited the bill in his own name.

The prayer of the bill was for account, foreclosure, and sale.

Thompson answered, and made his answer a cross-bill; he admitted the sale and mortgage, but stated that, pending the suit at law, he had paid A. J. Rembert, who had control of the note, $300,

and resold him the negroes, in full payment and discharge of the balance of the note ; that he was about having a receipt to that effect, on the back of the note, signed by Rembert, when, at the complainant's instance, it was not done, and the note was delivered up to the complainant with the unsigned receipt on its back ; and the suit at law was dismissed at Rembert's costs ; that the complainant, in his supposed character of trustee, expected to get the negroes for his own use, and therefore pursued the course he did ; that the note was wholly paid ; and he prayed that Rembert and Robinson might answer.

Their answers denied the allegations of the cross-bill, and disclosed this state of fact : that *an agreement* was entered into between Thompson and Rembert, and M'Grew and the complainant, that, for the benefit of the latter as sureties, Thompson and Rembert should settle the suit at law ; Thompson was to pay Rembert $300, and deliver him the negroes in discharge of the note, and that Rembert should dismiss the suit, pay the costs, and deliver up the note ; that the note was delivered to Robinson ; that the $300 were paid, and the suit dismissed, but that Thompson wholly failed and refused to deliver the negroes to Rembert; and that, as in duty bound, Robinson had redelivered the note to Rembert, who had instituted a new suit, the one now pending at law upon it, against all the parties to it. That on the 4th day of May, 1840, and since the pretended resale, Thompson had made affidavit that the negroes *were his own property*, to prevent their being levied on and sold under execution, as the property of George W. Rembert ; and that in a trial of right of property, of which the affidavit was the foundation, the negroes were adjudged to Thompson. The answer denied all fraud.

A. J. Rembert, in his answer to the original bill, elected to make himself a party complainant thereto, and claimed the benefit of the mortgage for the payment of his debt.

M'Grew's answer claimed that he was discharged from his suretyship by the arrangement between the creditor and principal debtor, as disclosed by the bill and answers.

Thompson afterwards, by leave of the Court, filed an amended answer, denying the assignment of the note to Andrew J. Rembert, announcing the death of George M. Rembert, and claiming that his

personal representatives be made a party to the bill ; averring that before any demand on him was made by A. J. Rembert to deliver him the negroes under the contract for a resale, he was garnisheed at law as. a supposed debtor of Rembert's, by J. and A. Miller, which process of garnishment was still pending : that Robinson had obtained a writ of *habeas corpus* for the negroes in controversy, at the trial of which the title to the negroes had been adjudged against the complainant ; and his right, therefore, to investigate the question of title in chancery, was denied.

It was admitted by counsel,

1. That George W. Rembert was dead at the time the bill was filed.

2. That the *habeas corpus* sued out by Robinson, to get possession of the negroes, was decided against the complainant.

3. That Thompson had taken the benefit of the bankrupt law, and in his schedule of assets he had made oath in May, 1842, that the negroes in controversy were his own property.

The deposition of M'Grew proved that the complainant had informed him of the agreement between Thompson, Rembert, and himself, and had stated that the note was paid, and they were wholly discharged from all liability upon it.

The deposition of Holliday, the sheriff of Copiah county, and of John M'Grew, the clerk of the county, proved the affidavit by Thompson, that the negroes were his own property.

*J. A. Maxwell*, for complainant.

The suretyship of Thompson and M'Grew, the execution of the note and mortgage, are admitted by the answer of defendant ; and complainant is entitled to a decree, unless the new matter set up by Thompson shall prevail. His defence consists of the following matters and allegations :

1. That the mortgage note was fully paid off and satisfied by the payment of $300, and a resale of the negroes by Thompson to Rembert.

2. That G. W. Rembert, one of the payees in the note, was dead when the bill was filed, and his administrator is not made party.

3. That the proceedings on the writ of *habeas corpus*, before Judge Harris, are final and conclusive, and a bar to the relief sought in the bill.

4. That Thompson has been garnisheed as a debtor of Rembert, and that proceeding is still pending.

1. The payment of $300 on the note, is admitted ; but the alleged resale and delivery of the negroes, in satisfaction of the balance of the note, is denied. There was an agreement between Thompson and Rembert to that effect ; but Thompson never would comply, by delivery of the negroes. The money was paid on the 7th February, 1840. Seventeen days after that time, and before Rembert called for the negroes, as Thompson states in his answer, to wit, on the 14th February, 1840, the sheriff levied on the negroes, as the property of Rembert. On May 4, 1840, Thompson gave to the sheriff a claimant's bond, and made affidavit that those negroes were not the property of Rembert, but were at that time his property ; and that he then claimed them under his original bill of sale from G. W. and A. J. Rembert, made in 1838. Yet Thompson in his answer, swears, that he paid off the mortgage note by a resale of those negroes to Rembert, in February, 1840. Here we have *oath* v. *oath* of the defendant — one neutralizing the other. To ascertain which oath is true, we must look further into the case. On May 4, 1842, and long since the commencement of this cause, Thompson filed his application in the Bankrupt Court ; and on his schedule of assets, by him sworn to, he sets down these same negroes as a part of his assets at that time ! Besides, it is proven that Thompson has had the negroes in possession ever since 1838 : he has resisted all attempts to deprive him of the possession, and he still claims the negroes as his property, and does not pretend that he repurchased them from Rembert, subsequent to the alleged resale. There can be no resale without a delivery of the negroes by Thompson to Rembert, and the agreement is shown never to have been complied with.

2. It is admitted, that G. W. Rembert, one of the payees on the note, was dead when the bill was filed ; but the payees were partners in trade under the firm of G. W. & A. J. Rembert ; and the note was indorsed by the firm before the death of J. W. Rembert.

A. J. Rembert is entitled to the note on two grounds : 1. As surviving partner ; and, 2. As indorsee. The defendant's own witness proves, that in July, 1840, A. J. Rembert had control of the note, and was authorized to settle the same with Thompson : and Thompson alleges, that he paid the note in full to A. J. Rembert by a resale of the negroes ; thereby acknowledging the right of Rembert. But, admitting that the bill should be dismissed as to Rembert ; as between Robinson and Thompson, it could not affect the case. The note is not paid, and Robinson is security ; Thompson is an applicant in the Court of Bankruptcy, and a suit is pending in the Circuit Court against Robinson.· The mortgage should be foreclosed, the property sold, and the money brought into Court for the indemnity of Robinson.

3. The consideration of the third point involves the proceedings on *habeas corpus* before Judge Harris. There is no record of these proceedings, but by agreement the testimony of Judge Harris is to stand in lieu of the record. This was a writ sued out by Robinson against Thompson, to obtain the possession of the negroes ; the decision was in Thompson's favor ; and M'Grew's sayings and doings were admitted in evidence, he being one of the mortgagees. These proceedings cannot affect the rights of Rembert, for he was not party to the record ; and the whole matter was *coram non judice.* By reference to the *habeas corpus* act, H. & H. 665, and to the proofs in this case, it will appear that there was no such case made before the Judge, as that he could give any judgment in favor of Robinson. The slaves were never taken nor seduced out of the possession of Robinson, by force, fraud, or otherwise ; he never had possession of them ; he never was the owner nor overseer of the slaves. The title to property cannot be tried on *habeas corpus ;* nothing but the naked question of possession.

4. The fourth ground of defence, is, that Thompson has been served with summons of garnishment by Rembert's creditors : he does not allege that a judgment has been rendered, or that he has paid anything as garnishee. If he had, however, it could not affect this case. By virtue of the mortgage, Robinson is entitled to have the mortgaged property subjected to the payment of the debt upon which he is bound as surety. If the property should be sold, the

Robinson *v.* Thompson, et al.

fund would be under the control of the Court : it could be applied to the extinguishment of the mortgage note, and thus indemnify the security. These facts would discharge Thompson of all liability as garnishee ; and the creditors of Rembert, upon a proper application to this Court, could subject the fund, to the payment of their debts.

*Work,* for Thompson and M'Grew.

The Court will perceive that in this case the defendant, Thompson, assumes three grounds as a defence to the bill.

1st. Thompson resold the negroes, for which the note was given, which extinguished the mortgage. This is a matter of fact, to be determined by the papers before the Court. The answer of Thompson and M'Grew states it, and it is proved by the deposition of M'Grew, who states, that Robinson took the note to him, and told him, in substance, that it was paid; and he says, the agreement of resale was between Rembert and Thompson, and that Robinson was no party, and not cognizant of the resale, and therefore the feeble denial of Robinson can have but little weight with the Court on this point.

2. The complainant obtained a *habeas corpus* to try the right of property to the negroes he wishes to subject to sale in this case, which was decided for Thompson ; and the complainant, having elected to try the question at law, is bound by that decision, and is not entitled to any relief in this Court.

3. The defendant Thompson is garnisheed as the debtor of Rembert in two cases of large amount, not yet decided; and, till the disposition of those cases, the negroes ought not to be taken from him.

One of the Remberts is dead, as is admitted by the counsel, and appears from the proof, and the notes were given to both of them, and it nowhere appears that the dead one has assigned his interest to the other, and the personal representatives of the deceased one are not before the Court, for which cause the bill should be dismissed.

The principles involved in this case are so familiar to the Chancellor, that it is supposed unnecessary to cite authorities, and the

Robinson *v*. Thompson, et al.

counsel cheerfully refers the questions to the superior abilities and attainments of the Chancellor.

CHANCELLOR. This is a bill in the ordinary form to foreclose a mortgage, given by the defendant Thompson upon two negro slaves, to the complainant and the defendant M'Grew, to indemnify them as Thompson's sureties, on a note payable to A. J. & G. W. Rembert, for the sum of twelve hundred dollars. The mortgage provides, that if Thompson failed to .pay said sum of money, the mortgagees should be at liberty to sell the slaves, and apply the proceeds in discharge of their liability, as sureties of the mortgagor. It is further alleged, that Thompson failed to pay the note, except the sum of three hundred dollars ; and that he refused to deliver the slaves to be sold in accordance with the terms of the mortgage.

It appears that the note upon which the complainant is surety, was given to the Remberts for the purchase of the same slaves, afterwards mortgaged to the complainant and M'Grew. The defendant (Thompson) resists a foreclosure of the mortgage, upon three grounds. 1. He insists, in his answer, that the note, against which the mortgage was given as indemnity to the complainant, has been extinguished by an agreement between himself and Rembert, that he should pay three hundred dollars, and deliver back the slaves to Rembert, in discharge of the remainder of the money due on said note. Although such an agreement may have been made, yet the proof falls short of showing a compliance therewith, on the part of Thompson. On the contrary, he is shown not only to have retained the possession of the slaves long after this agreement, but made oath that they were his property. Even, therefore, if such an agreement was made, it is clear that it was never carried into effect, and that the right of property in the slaves was not thereby changed. It would be a novel application of the rule of equity, to consider that as done which was agreed to be done, in favor of a party, who himself prevented the execution of the agreement.

2. The second ground taken, is, that the defendant Thompson has been garnisheed at law by the creditors of Rembert. I do not readily perceive what connection this fact has with the right of the

complainant to foreclose his mortgage, and have himself discharged from his suretyship, by applying the proceeds of the slaves in payment of the debt for which he is bound, to any one who may show a legal right thereto. A payment of the debt to Rembert's creditor, if legally entitled thereto, would as fully discharge him, as if paid to Rembert himself. Such a state of things would only devolve upon the Court a different application of the money from that which would otherwise take place.

3. The third ground is, that no decree can take place in favor of the complainant, until the representatives of G. W. Rembert, who is alleged to be dead, are made parties. The proofs disclose the fact, that A. J. & G. W. Rembert were partners, and, according to a familiar principle of the law of partnership, the right of administering the partnership effects survived to the surviving partner ; he, therefore, is the proper and only necessary party to represent the partnership interests. From this view of the case, I am of opinion, that the complainant is entitled to the relief which he asks, and shall accordingly direct a reference, to ascertain the amount now due from Thompson, and, upon a report being made, a decree of foreclosure and sale may be had on the usual terms. The decree must provide that the money when collected shall be brought into Court, subject to be applied as the Court may direct.